334 So.2d 717 (1976)
Gary EVANS, Plaintiff-Appellant,
v.
A. L. "Rabbit" LITTON, Defendant-Appellee.
No. 12963.
Court of Appeal of Louisiana, Second Circuit.
July 7, 1976.
John M. Robinson, Springhill, for plaintiff-appellant.
Colvin, Hunter, Brown & Plummer by Robert E. Plummer, Mansfield, for defendant-appellee.
Before BOLIN, PRICE and MARVIN, JJ.
PRICE, Judge.
Gary Evans brought this action against A. L. Litton to recover damages for the alleged shooting by Litton of three dogs belonging to plaintiff on September 16, 1975. Defendant, in an answer and reconventional demand, admitted shooting the dogs, but alleged he took this action because he found the dogs in a hog pen belonging to him eating on three Hampshire hogs which the dogs had just killed. Defendant also contends one of the dogs growled and leaped at the fence indicating he would attack him. Defendant asked to be awarded judgment for the value of the hogs and for *718 fifteen chickens alleged to have been killed by the dogs a few days prior to this incident.
After trial of the merits, the district court rejected plaintiff's demands and awarded defendant judgment on his reconventional demand for the sum of $300, the estimated value of the hogs. The remaining demand for the value of the chickens alleged to have been destroyed was rejected.
Plaintiff has appealed from this judgment assigning as error the finding by the trial judge that the dogs were vicious within the purview of LSA-R.S. 3:2773, which had the effect of exonerating defendant from liability in shooting the animals. Appellant also contends the amount awarded for the value of the hogs is excessive.
The pertinent facts giving rise to this controversy are set forth accurately in the trial judge's reasons for judgment as follows:
The evidence establishes that Mr. Floyd N. "Bud" Evans, Jr., who is the father of Plaintiff, Gary Evans, and Mr. A. L. "Rabbit" Litton live on adjoining farms in the Evelyn Community.
During the period of time here involved the two Great Danes and the Dalmation, all three of which belonged to Mr. Gary Evans, were staying on the Evans farm. It was stipulated that the dogs were registered animals.
Mr. Litton maintained a hog pen on his farm. It was located on a small parcel of his land that lay between a road and a fence that was built on a property line between the lands of Mr. Litton and Mr. Evans. In other words, the hog pen was only a few feet from Mr. Evans' farm. In fact, the hog pen was only about 100 yards from Mr. Evans' dairy barn.
The hog pen was built out of panels of tin and wide planks, which were nailed, lengthwise to posts to form the pen. Entrance to the pen could be made through a gate, which could be fastened. The sides of the pen were about "shoulder" high to the average sized adult, and were of a sufficient height that a passerby would not be able to clearly see into the pen unless he got up close to it. There were three grown Hampshire breed hogs in the pen on September 16, 1975.
On that date, September 16, 1975, Mr. Litton and his employee, Mr. Joseph C. Remedies, were passing in the vicinity of the hog pen, and their attention was drawn to the pen by some activity there. Upon investigating Mr. Litton found Mr. Evans' three dogs in the pen, two of which were running about, and one, the Dalmation, was eating on one of his hogs. The three hogs were lying on the ground, near death, but "still kicking" when he looked in the pen. Apparently they died shortly thereafter. As Mr. Litton approached the pen one of the dogs growled and lunged against the inside of the pen at him. Mr. Litton had a .38 caliber pistol, and with this pistol he shot and killed the dog that had lunged at him. He then shot and killed the other two dogs. All three of the dogs were in the hog pen when he killed them. Upon examining the hogs Mr. Litton and Mr. Remedies found that they were dead. They were gashed and cut all over, and were quite bloody.
Mr. Litton and Mr. Remedies found that the gate to the hog pen was closed and fastened.
LSA-R.S. 3:2773 in pertinent part reads as follows:
* * * Any citizen or officer may kill any dangerous or vicious dog, and no citizen or officer shall be liable to damages or to prosecution by reason of killing any dangerous or vicious dog.
Whether or not the dogs involved were vicious within the meaning of the foregoing statute is a factual determination *719 to be made by the trial judge on the basis of how a reasonable man would have reacted upon finding the dogs slaughtering the swine. See State of Louisiana, In the Interest of Claude Randolph Ballard, Jr., 301 So.2d 436 (La.App.2nd Cir. 1974).
The trial judge resolved this issue in favor of defendant for the following reasons:
Mr. Litton found the dogs on his land, in his locked hog pen, at a time when they had obviously just finished killing his three large hogs. One of the dogs growled at Mr. Litton and lunged at him. Since the dogs had undoubtedly jumped into the pen they could jump out. The acts of killing the hogs was vicious, as well as the general mood of the dogs when Mr. Litton and Mr. Remedies appeared on the scene. The growling and jumping of the dog was a hostile act. The evidence establishes that the dogs, which were very large animals, gave every indication of being vicious and dangerous, and Mr. Litton was justified, under the provisions of LSA-R.S. 3:2773, in killing the dogs. * * *
From our study of the record, we find no manifest error in the conclusion reached by the trial judge on this issue.
As the trial court found as a fact the dogs killed the three hogs belonging to Litton, there is no question as to the liability of their owner, Evans, for the damages caused by the dogs. C.C. Article 2321. Holland v. Buckley, 305 So.2d 113 (La.1974).
The evidence is insufficient to sustain the amount awarded by the trial court for the value of the hogs. The court accepted the testimony of Litton that he estimated the weight of the swine to be approximately 200 pounds each. This finding overlooks the testimony of Litton's employee, Remedies, who picked up and loaded the dead hogs after the incident, that they probably weighed 75 to 100 pounds each. As he physically handled the dead animals, he was in the best position to judge their weight. For this reason, the judgment should be reduced to allow Litton damages for 300 pounds at the accepted price of $.50 per pound or a total of $150.
The judgment appealed from is amended to reduce the sum awarded to the original defendant and plaintiff in reconvention from $300 to $150, and in all other respects the judgment is affirmed. Costs of this appeal are to be divided equally between the parties.