509 So.2d 779 (1987)
STATE of Louisiana in the Interest of James R. ROWLAND.
No. 19063-CAJ.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
Stephen R. Burke, Minden, for defendant-appellant, James R. Rowland.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Jonesboro, John Michael Ruddick, Asst. Dist. Atty., Haynesville, for plaintiff-appellee, State of La.
Before HALL, SEXTON and NORRIS, JJ.
SEXTON, Judge.
This juvenile defendant was charged with being a delinquent child in that he allegedly violated LSA-R.S. 14:102.1, Cruelty to Animals, by the intentional killing of a beagle dog named Roscoe. After a trial he was adjudged a delinquent child and placed on probation for one year on the condition that he make restitution to the owner of the dog for the value thereof. The juvenile appeals asserting four assignments of error.

*780 FACTS
The facts relevant to the shooting of the beagle dog belonging to Mr. and Mrs. Mike Blackwelder are in some dispute.
The juvenile, who was 15 years old at the time of the incident, was living in the home of a family friend, Mr. David Fish, where the juvenile was raising eight ducks which he had received from his uncle. He testified that he had built a pen for the ducks; that a yellow and tan mixed breed dog and a beagle dog had been bothering the ducks; and that after two ducks had been killed he turned the remaining ducks out of the pen so that they would not be cornered in the pen by a dog.
The Blackwelders, who owned the beagle dog, lived down the road from the Fish residence. They walked or jogged past the Fish residence almost daily during daylight hours. The beagle was often with the Blackwelders as they went by the Fish residence. The Blackwelders had seen the juvenile at the Fish residence.
The juvenile testified that he knew Mr. and Mrs. Blackwelder, took a class once from Mr. Blackwelder at Homer High School, knew where the Blackwelders lived, and saw Mrs. Blackwelder walking up and down the road on occasion. However, the juvenile testified that he believed the beagle belonged to a family other than the Blackwelders and that he had never seen the beagle with the Blackwelders. David Fish testified that he thought someone else owned the beagle. He said that person had indicated to him that he did not care if Mr. Fish killed the dog. It is unclear whether the beagle was wearing a collar.
Mr. Blackwelder testified that on September 17, 1986, he jogged past the Fish residence with his dog following him. While he was returning home, he again passed the Fish residence and saw the juvenile in Mr. Fish's yard approximately 20 to 25 feet from the roadway. The juvenile was holding a shotgun. A Labrador retriever puppy came out from Mr. Fish's yard and started jumping up on Mr. Blackwelder. He shooed the puppy away and then looked behind him to see if his dog was coming. He saw the juvenile shoot his dog which was in the road behind him. Mr. Blackwelder then saw the juvenile go into the Fish house. Mr. Blackwelder found, upon examination, that his dog was dead.
Mr. Blackwelder testified that he had never seen any ducks in Mr. Fish's yard; that he had never seen his dog go behind the Fish house; and that on September 17, 1986, the dog did not go into Mr. Fish's yard. Mrs. Blackwelder also indicated that she had never seen the dog go into the yard or bother any ducks.
The juvenile testified that on September 17, 1986, he and David Fish drove up to the Fish residence at about 4:30 p.m. and saw the beagle chasing a duck around the yard. The juvenile threw a rock at the dog as he chased it out of the yard. Some time later, just prior to shooting the dog, the juvenile was in the kitchen when he heard a commotion and saw the dog chasing a duck. He shouted to David Fish who was in the bathroom. Fish told the juvenile to shoot the dog. The juvenile grabbed a gun, walked outside, and saw the dog with the duck in its mouth. The dog dropped the duck at the corner of the house and then went out in the front yard. The juvenile testified that "[the dog] got right here by this big tree, and turned around, looked at me, and I shot it." He testified that he intended to kill the dog. As soon as the juvenile shot the dog, he saw Mr. Blackwelder come running down the road from the Blackwelder house.
David Fish, in his testimony, agreed that he had told the juvenile to shoot the dog upon learning that the dog was attacking a duck. He said he immediately got out of the bathtub, put on his pants and went outside. At that time he observed the juvenile shoot the dog as the juvenile related. He also said that when he exited the house the duck was under the house squalling and that in spite of the medical attention they gave it, the duck died three days thereafter.
The juvenile defendant asserts four assignments of error which read as follows:
(1) The Honorable District Judge erred in ruling that the defenses contained in LA. R.S. 14:18 through LA. R.S. *781 14:22 were not available to the Juvenile in this particular proceeding.
(2) The Honorable District Judge erred in finding the juvenile to be delinquent and in need of supervision.
(3) The Honorable District Judge erred in ordering the juvenile to make restitution in this matter.
(4) The findings of the Honorable District Judge were contrary to the law and the evidence.

SUFFICIENCY OF EVIDENCE

ASSIGNMENTS OF ERROR NOS. 2 and 4
First, we consider defendant's Assignments of Error Nos. 2 and 4, which we interpret to be complaints of insufficient evidence to sustain the defendant's conviction.
The juvenile was charged under the statutory subsection which reads as follows:
§ 102.1 Cruelty to animals
A. Any person who intentionally or with criminal negligence commits any of the following shall be guilty of cruelty to animals: * * *
(2) Tortures, torments, cruelly beats or unjustifably injures, maims, mutilates, or kills any living animal, whether belonging to himself or another.
When the state petitions that a child be adjudged a delinquent, the state must prove each element of the alleged delinquent act beyond a reasonable doubt. LSA-C.J.P. Art. 73; State in the Interest of Cason, 438 So.2d 1130 (La.App. 2d Cir. 1983). The elements of this offense are: (1) intent, (2) the killing of a living animal, and (3) lack of justification therefor.
Because this is a juvenile delinquency proceeding, we are constitutionally required to review the law and the facts. LSA-Const. Art. 5, § 10(B) (1974); State in the Interest of Redd, 445 So.2d 126 (La. App. 2d Cir.1984); State in the Interest of Cason, supra. Therefore, not only are we required to review the evidence under the standards mandated by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), but we are also required to apply Louisiana's standard of review for civil cases as set out in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), writ denied 374 So.2d 660 (La.1979); State in the Interest of Redd, supra; State in the Interest of Cason, supra.[1]
The Jackson v. Virginia standard requires that we determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude that the state proved all of the elements of the offense beyond a reasonable doubt. Under the civil standard of Arceneaux v. Domingue, rather than considering the evidence in the light most favorable to the prosecution, we are obligated to accept reasonable evaluations of credibility and reasonable inferences to determine if, considering the overall weight of the evidence, the verdict is clearly wrong. State in the Interest of Cason, supra; State in the Interest of Cox, 461 So.2d 658 (La.App. 1st Cir.1984), writ denied 464 So.2d 1375 (La.1985). There is no difficulty determining that the juvenile intentionally shot the dog. These elements are conceded. The critical issue is whether, under the standards of review noted, the state proved the final element of the offense, i.e., a lack of justification for the shooting.
Any person may kill a dangerous or vicious dog without being liable for damages or prosecution. LSA-R.S. 3:2773. In Collier v. Hoffman, 482 So.2d 922 (La.App. 2d Cir.1986), a civil action for damages, we affirmed the trial court decision exonerating from liability a defendant who shot two trained security dogs, one of which was in the process of devouring one of the defendant's rabbits and the other which approached the defendant as if to attack. *782 Also, in Evans v. Litton, 334 So.2d 717 (La.App. 2d Cir.1976), also a civil action for damages, the trial court's exoneration of the defendant was affirmed. There the defendant shot and killed three dogs that he caught eating his three mangled and dying hogs in their pen. The plaintiff first shot one of the dogs that lunged at him against the inside of the pen and then shot the other two dogs. Both of these decisions were affirmed on the basis that the trial courts' determination that the dogs at issue were vicious was not clearly wrong.
In this same general regard, the defendant cites State in the Interest of Ballard, 301 So.2d 436 (La.App. 2d Cir.1974), as authority for the proposition that a juvenile who shoots a dog may not be adjudged delinquent. In that case, the juvenile killed a boxer dog that was then attacking his dogs which were chained up. The attacking dog had evidenced vicious propensities in the past and the efforts of the juvenile to repel the attacker with the butt of his weapon were to no avail.
Contrary to Collier and Evans, which were affirmations of civil cases under the manifest error rule, Ballard was indeed a reversal of a juvenile's adjudgment as a delinquent on the basis that LSA-R.S. 3:2773 authorized the killing of a vicious dog. However, the case does not stand for the proposition asserted by the defendant that a juvenile may not be adjudged delinquent for shooting a dog. The holding of the case is that the particular Ballard juvenile could not be adjudged a delinquent for shooting a dog that the evidence of that case showed to be vicious.
Involved in the instant case was a small dog that was obviously in the company of someone. There is absolutely no indication that the dog evidenced viciousness toward any person. The evidence does not indicate the killing was necessary to prevent a continued attack on farm animals.[2] The dog had in fact retreated, even under the defense version of the evidence.
We determine that under either Jackson v. Virginia, or Arceneaux v. Domingue, the juvenile was not justified in shooting Roscoe. Under Jackson v. Virginia, accepting the evidence in the light most favorable to the prosecution, the dog was following its master and there was no justification to shoot it. Under Arceneaux v. Domingue, considering reasonable evaluations of credibility and the weight of the evidence, the trial court could well have found all the elements of the offense, to include that no justification to shoot the dog existed.[3] Such a determination is not clearly wrong.
Also, State in the Interest of Batiste, 367 So.2d 784 (La.1979), cited by the defendant for the proposition that the state must both prove beyond a reasonable doubt that the child has committed a crime and that the child is in need of care or rehabilitation in order for a child to be adjudged delinquent, does not assist the defendant. Batiste was decided prior to the adoption of the Code of Juvenile Procedure. That code simply requires that for one to be adjudged a delinquent child, the state must prove beyond a reasonable doubt that the child has committed an offense under the statutes of this state. LSA-C.J.P. Arts. 13(7), (12) and 73.
These assignments of error lack merit.

DEFENSES

ASSIGNMENT OF ERROR NO. 1
In this assignment, defendant complains that the trial judge did not consider LSA-R.S. 14:18 through 14:22 which deal with justification as a defense and when the use of force is justifiable.
In this context, we note that while lack of justification is an essential element of the offense charged, the defendant did not complain in the trial court, and does not complain to us, that the trial court failed to consider that the state must prove lack of *783 justification beyond a reasonable doubt. We perceive and consider the defendant's position to be that the trial court did not consider justification as a defensebut not to be that justification was not considered as an element.
Section 20 is inapplicable because it defines justifiable homicide. Obviously, this offense is not a homicide. Section 21 is inapplicable as it precludes a person who is an aggressor from claiming self-defense. Self defense is not at issue. Likewise, Section 22 is also clearly inapplicable because it authorizes force or violence only in the defense of "another person." The juvenile claimed to be defending the ducks.
Section 18 requires further inquiry as it states:
§ 18. Justification; general provisions
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
(1) When the offender's conduct is an apparently authorized and reasonable fulfillment of any duties of public office; or
(2) When the offenders' conduct is a reasonable accomplishment of an arrest which is lawful under the Code of Criminal Procedure; or
(3) When for any reason the offender's conduct is authorized by law; or
(4) When the offender's conduct is reasonable discipline of minors by their parents, tutors or teachers; or
(5) When the crime consists of a failure to perform an affirmative duty and the failure to perform is caused by physical impossibility; or
(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed; or
(7) When the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22.
Only subpart (7) of this exclusive list of circumstances authorizing the defense of justification is available to this juvenile. We are thus referred to Section 19 (Sections 20-21 have already been shown to be inapplicable), which states:
§ 19. Use of force or violence in defense
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
Therefore, under the circumstances of this case force or violence is justifiable if necessary to prevent trespass against property in a person's lawful possession only if the force or violence is "reasonable" and "apparently necessary to prevent such offense."
Subsequent to the verdict, in response to defense counsel's request for the court to state "for the record" whether the aforesaid articles were applicable "to this situation," the trial court responded, "the Court has concluded that the self-defense articles are not applicable to this particular situation." The court later reiterated this statement in only slightly different terms.
We do not discern the import of the trial court's statement to be that under no circumstances was the defense of justification available to the charge in question. Rather, we discern, from the wording of the trial judge's statement, that the pertinent sections19 by way of 18(7)do not pertain to the instant circumstances. We agree. The best that can be said from the juvenile's standpoint is that he shot a dog that had concluded its attack on the juvenile's water fowl and the shooting was at the instigation of an adult with whom the juvenile was temporarily residing.
*784 The fact that an adult has counseled this fifteen year old to commit an otherwise unlawful act is of no moment. The question under Section 19 is simply whether reasonable force was apparently necessary to prevent an offense against this individual's property.
Force was unnecessary to prevent the "trespass against property" as any possible trespass had concluded. Moreover, the force was patently unreasonable. Of course, the foregoing presumes that Roscoe's alleged attack on the ducks is the type of forcible offense or trespass against the type of property definitionally protected by Section 19a proposition we seriously doubt.
In summary, we conclude that the trial judge's comments did not mean that generally justification was not a question for consideration in a prosecution of this nature, but rather that the appropriate articles were inapplicable to the circumstances at issue before him. Nevertheless, the articles cited by the defense do not assist the instant juvenile under the circumstances here presented.
In concluding this discussion of the defendant's contention that the trial judge did not consider certain appropriate defenses, we should note that a judge in a bench trial is not required to give reasons in support of his verdict, nor is he required to charge himself on the applicable law unless he is specifically so requested, as he is presumed to know it. As a trier of fact, he is simply bound to apply the law to the evidence. LSA-C.Cr.P. Art. 781; State v. Aldridge, 450 So.2d 1057 (La.App. 1st Cir. 1984). Where there is doubt, the defendant has the responsibility to request a specific charge and object if the charge given is incorrect in order to preserve the issue for appellate review. State v. Strickland, 398 So.2d 1062 (La.1981); State v. Reeves, 342 So.2d 605 (La.1977).
This assignment of error lacks merit.

RESTITUTION

ASSIGNMENT OF ERROR NO. 3
In his Assignment of Error No. 3, the juvenile contends that the district court erred in ordering him to make restitution in this matter. LSA-C.J.P. Art. 83 A(7) states as follows:
Art. 83. Disposition; adjudication of delinquency
A. In cases in which a child has been adjudicated a delinquent the court may:
* * * * * *
(7) Defer or suspend execution of the judgment of disposition and place the child on probation under such terms and conditions as deemed in the best interests of th child and public. The court shall require as a condition of probation that the child:
(a) Perform court-approved community service activities, or
(b) Make reasonable restitution.
In placing a juvenile on probation, the court is mandated by this subsection to require community service or restitution. It is fully within the court's discretion to choose the appropriate alternative. State in Interest of Hickerson, 424 So.2d 1233 (La.App. 1st Cir.1982); State in Interest of Irving, 434 So.2d 543, (La.App. 2d Cir. 1983).
Assignment of Error No. 3 is without merit.
Accordingly, the trial court adjudication and disposition is affirmed.
AFFIRMED.
NOTES
[1] For an interesting discussion of the similarities and distinctions involving a Jackson v. Virginia reviewin the light of the evidence most favorable to the stateand an Arceneaux v. Domingue reviewclearly wrongsee State in the Interest of Cox, 461 So.2d 658 (La.App. 1st Cir. 1984). The First Circuit determined that under either standard that defendant was properly adjudicated and did not resolve the conflicts it discerned between the two standards.
[2] Interestingly, fowl are not defined as animals. LSA-R.S. 14:102.1 D.
[3] We further elaborate on the issue of justification as well as the presumption the trial judge properly applied the law in our discussion of defendant's Assignment of Error No. 1 regarding justification as a defense to the crime asserted.