JASPER E. JONES, Judge.
Paul Litty, Jr., a 15 year old juvenile, was adjudicated a delinquent and placed on two years probation for committing the offense of simple criminal damage to property. The juvenile appeals the judgment of adjudication and disposition contending that his delinquency adjudication was based upon insufficient evidence. Finding merit to his argument, we reverse the adjudication of delinquency and vacate the disposition for the following reasons.
On November 24, 1986, nine petitions were filed against the appellant charging him with nine counts of simple criminal damage to property in violation of LSA-R. S.14:56 for intentionally slashing the tires of several cars located in the parking lot of the Cordova Apartments in Bossier City, Louisiana. An adjudicatory hearing was held in which appellant was found guilty of one count of simple criminal damage to property and not guilty of the remaining counts.
That the tires of several cars were slashed in the parking lot of the Cordova Apartment Complex on or about July 25, 1986 is not in dispute. The juvenile contends as his only assignment of error that the State failed to prove beyond a reasonable doubt that he was the perpetrator of the offense.
FACTS
On the evening of July 25,1986, the tires of several automobiles were slashed in the parking lot of the Cordova Apartments in Bossier City, Louisiana. Michel Bering, a resident of the apartment complex, was entertaining some friends when his attention was distracted by a hissing sound outside. Bering stepped outside onto the balcony of his second story apartment and observed a young man wearing no shirt, crouched beside a gold Fiat some thirty-five to forty feet away from where Bering stood on the balcony. Bering shouted at the youth who immediately ran from the parking lot. Bering ran down the steps of the balcony over to the Fiat and saw that the tires were slashed. He immediately called upstairs and requested his visiting friend Thomas Jenkins to assist in catching the offender and advised his wife to call the police.
*851 After about eight to nine minutes of futile search, Bering and Jenkins encountered the appellant and his companion Bert Winer walking along a side road on the back side of the apartment complex near the Roadrunner gas station. Bering stopped Winer and the appellant, who was wearing a black T-shirt, and asked whether they had seen anyone suspicious running around. Both answered no, but related that Bert Winer’s red Nova, also parked in the Cordova parking lot, had its tire slashed. Bering then returned to the parking lot where the police had arrived and were investigating the scene. Bering was questioned by the police, but did not relate his suspicions about the appellant being the perpetrator at that time. He identified the appellant as the culprit several days later in a photo line-up and again at trial.
At the adjudicatory hearing, the state introduced the testimony of Bering who related the above facts and further characterized the individual crouched by the car as “broad-shouldered”. When asked by the court “why is it that you didn’t know it was Paul Litty when you saw the people walking down the road right after it happened”, Bering replied “at that time, I didn’t want to make any accusations about anybody.”
Officer William Pierce of the Bossier City Police Department stated he was dispatched on a vandalism call to the Cordova apartments on the night of the incident and had seen the appellant at the Roadrunner gas station en route to the scene and had later questioned him at a nearby 7-Eleven an hour after investigating the scene at the parking lot.
Officer Charles Reynolds related a telephone conversation with Nina Negron who attended a lawn party on Westgate across from the Cordova apartments on the night of the incident. Officer Reynolds testified she stated the appellant had admitted to her he had slashed the tires and further wanted her to provide him with an alibi by stating he had been at the party the entire night. Ms. Negron never came to the police department nor did she give a written statement to the police.
The defense evidence consisted of the testimony of Donna Hair, the owner of the premises where the party occurred; Nina Negron, a teenager present at the party; Kevin King, maintenance man at the Cor-dova apartments also present at the party; Bert Winer; and the juvenile appellant, Paul Litty.
Ms. Hair testified she came home after the party had started and, while standing outside talking with Kevin King, was approached by a youth who was a stranger to her. The male stranger wore blue jeans and a dark shirt. He had a knife strapped to each leg. He was also sweating, and asked Ms. Hair to hide him as the police were looking for him. He then admitted to Ms. Hair he had slashed the tires. Ms. Hair specifically stated this male was not the appellant Paul Litty. Ms. Hair also testified she has no relationship with Litty nor had she ever seen him until immediately before the trial.
Kevin King related the events of the evening consistent with Ms. Hair’s testimony. He described the unknown ybuth as blond and approximately six feet in height weighing 165 pounds. He also stated the youth was equipped with two butterfly knives and appeared “uptight”, sweating, and out of breath, as if “he had been running from somebody or running from something.” King stated the individual with the knives was not Litty, although he indicated Litty was present at the party.
Nina Negron testified she was acquainted with Litty and she observed him at the party on Westgate that night. She also stated she saw a young male with knives strapped to his legs approach Donna Hair and further observed the male was breathing hard and sweating as if he had been running. She stated Ms. Hair then ordered everyone who was a minor off the premises, including herself and Litty. She denied stating Litty had slashed the tires in her conversation with Officer Reynolds.
Litty testified he attended the party on Westgate with Bert Winer; that they then left the party to get Bert’s car at the Cordova apartments and discovered Bert’s tires were slashed; that they encountered *852 two black males and two white males while searching the apartment complex for the offender; and that they then returned to the party and stayed until Donna Hair ordered all minors off the premises. Litty denied slashing any of the tires, and Bert Winer’s testimony supported Litty’s chronicle of events.
APPLICABLE LAW
We note appellate review in juvenile delinquency adjudications is not limited solely to questions of law, as it is in criminal matters, but extends to questions of fact, such as witness credibility. See State in Interest of Cason, 438 So.2d 1130 (La.App. 2d Cir.1983); State v. Redd, 445 So.2d 126 (La.App. 2d Cir.1984); State in Interest of Rowland, 509 So.2d 779 (La.App. 2d Cir.1987), writ den., 513 So.2d 290 (La. 1987); State v. Frith, 499 So.2d 474 (La.App. 2d Cir.1986), writ den., 503 So.2d 490 (La.1987). The Louisiana Constitution of 1974 article 5, § 10(B) requires the appellate court to review the law and the facts in juvenile proceedings. Cason, Redd, and Rowland, supra. The applicable standards are enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Under Jackson v. Virginia, we are required to determine whether the evidence, when viewed in the light most favorable to the prosecution, is sufficient for the trier of fact to have found the appellant guilty beyond a reasonable doubt. Where the key issue is appellant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of mis-identification. State v. Long, 408 So.2d 1221 (La.1982); State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). Under Ar-ceneaux, the appellate court must accept reasonable evaluations of credibility and reasonable inferences and review the overall weight of the evidence to determine whether the trial court was clearly wrong in its fact-findings.
ANALYSIS
The evidence is insufficient to establish that Litty was the offender. The state presented the hearsay testimony of Officer Reynolds, offered for its truth, wherein the officer related the incriminating remarks allegedly made by Nina Neg-ron. Ms. Negron in her testimony specifically denied making these statements, resulting in this evidence being of no probative value.
Bering, the state’s eyewitness, gave no sound explanation as to why he did not identify Litty as the offender at the more appropriate time when he saw and talked to the juvenile immediately after the incident, when the description of the offender would be paramount in his mind. This very strange circumstance with no explanation, results in a failure by the state to negate a reasonable probability of misiden-tification in the photo lineup of several days later and the in-court identification.
We conclude no reasonable factfinder viewing the evidence in the light most favorable to the state could conclude that the state had proved beyond a reasonable doubt that Litty was in fact the youth who cut the tires and further determine the state did not meet its burden of negating any reasonable probability of misidentification. We note additionally other evidentia-ry circumstances wherein the appellant’s guilt is negated. Of primary importance is Mr. Bering’s statement that the offender was “broad-shouldered;” the appellant in fact is slightly-built, stands five foot three inches tall and weights 125 pounds.
Aside from the discrepancy between Mr. Bering’s description and Litty’s physical build, we note the testimony of Ms. Hair, Ms. Negon, Kevin King, Bert Winer, and the appellant Litty all placing the accused at the party at the time of the slashings. Further, both Ms. Hair, Ms. Negron, and Kevin King testified to the presence of a youth with knives strapped to his legs who admitted to committing the crime. While the individual was unknown to these witnesses, all specifically stated the youth was not Paul Litty.
*853 Under Arceneaux, considering reasonable evaluations of credibility and the overall weight of the evidence, we cannot conclude Paul Litty’s guilt could be reasonably inferred on the face of this record. We therefore hold the trial judge’s determination is clearly wrong.
CONCLUSION
For the reasons expressed above the judgment of adjudication is reversed and the judgment of disposition is vacated and the petition is dismissed and the juvenile is ordered discharged.