# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-252

**STATE IN THE INTEREST OF T.M.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
CITY COURT OF JEANERETTE
PARISH OF IBERIA, NO. 3176
HONORABLE CAMERON B. SIMMONS, CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**AFFIRMED.**

**Charlotte G. Bordenave**
**Public Defender's Office**
**215 West Saint Peter Street**
**New Iberia, Louisiana 70560**
**(337) 365-4006**
**Counsel for Appellant:**
  **T. M. (child)**

**Walter J . Senette, Jr.**
**Assistant District Attorney**
**Post Office Box 268**
**Jeanerette, Louisiana 70538**
**(337) 276-5603**
**Counsel for Appellee:**
  **State of Louisiana**

**KEATY, Judge.**

After a hearing, T.M.[1] and her mother were adjudicated a Family in Need of Services (FINS) based upon T.M.'s truancy from high school. She was placed in the custody of the State of Louisiana for one year, suspended, with supervised probation with the Office of Juvenile Justice (OJJ) for eighteen months with special conditions. T.M. appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Although the issue to be decided in this appeal appears to be res nova, the facts are generally not in dispute. On October 4, 2016, a FINS Petition was filed in Jeanerette City Court (hereafter the trial court), under La.Ch.Code art. 730, against E.H., the mother and caretaker of T.M., a fourteen-year-old female, because of T.M.'s truancy with twelve absences from school, of which all but one were unexcused. According to the petition, attempts had been made to assist and encourage the family to remedy the problem by all appropriate and available means, but to no avail. The petition further alleged that because T.M. was ungovernable and could not be controlled by her parent without posing a danger to herself or other family members, a mandatory conference was not appropriate in the matter.

An adjudication and dispositional hearing was held on February 1, 2017, where T.M. was represented by an attorney from the Iberia Parish Public Defender's Office. At the start of the hearing, the State offered into evidence, as State's Exhibit 1, T.M.'s record from Jeanerette Senior High School (JSH), showing that she had missed thirty-eight days during the current school year. While T.M.'s attorney indicated that she had no objection to the State's exhibit,

---

[1] The initials of the minor child and her mother are used to protect the minor's identity. *See* Uniform Rules—Courts of Appeal, Rules 5–1, 5–2.

she sought to introduce into the record a document showing that T.M.'s mother had withdrawn her from JSH and enrolled her in an online homeschool program. Upon the admission of its sole exhibit into evidence, the State rested its case. T.M. then called as a witness James Russell, a school attendance officer employed by the Iberia Parish School Board (IPSB). After Mr. Russell was sworn in, but before any testimony was elicited from him, T.M.'s attorney made an oral motion to continue the matter without date on the ground that the matter was moot because of T.M. having transferred into a homeschool program. The State did not object to a continuance given the fact that T.M. and her family were already receiving FINS services through the district court. Nevertheless, the trial court denied the motion to continue.

T.M.'s attorney was then allowed to present her defense to the petition. Mr. Russell testified that Louisiana law allows a parent to remove their child from a traditional school and to enroll them in a homeschool program whereby the parent assumes responsibility for their child's education. Mr. Russell explained that homeschooled students remained subject to state-mandated testing, although he was unfamiliar with how they were monitored by the State. He was shown a document marked Defense Exhibit 1, which he identified as a letter dated January 20, 2017, welcoming T.M. to the Connections Academy (CA).[2]

The State's attempt to cross-examine Mr. Russell regarding T.M.'s school performance, attendance, and how he thought she would do in homeschooling was met by an objection from the defense regarding relevancy. The trial court sustained the objection on the basis that such testimony would be more relevant to the disposition if it were to adjudicate T.M. and her mom as FINS. The trial court

---

[2] The letter was addressed to T.M. and her mother from Mr. Bruce Hoffmann, informing them that T.M. was in his homeroom and his math class and instructing them on how to download the software to participate in the CA.

then questioned Mr. Russell about a December 14, 2016 letter in T.M.'s school record. Mr. Russell identified the letter as a notification to T.M.'s mother that the IPSB had held an administrative hearing to review T.M.'s welfare and school attendance and that it had upheld her suspension from JSH and placed her on probation for the remainder of the school year. When asked about the procedure for enrolling a student into a recognized homeschool program, Mr. Russell confirmed that the State Department of Education had to approve a student's entrance into such a program. Although he had no personal knowledge of whether the request for T.M. to enroll in the CA had been approved, Mr. Russell stated that he was unaware of any student having been denied such approval.

On redirect from the defense, Mr. Russell stated that as far as the IPSB was concerned, T.M.'s education was in the hands of her mother and the CA, and T.M. had the option of returning to the IPSB system regardless of how she did in the homeschool program. He agreed that in removing T.M. from the IPSB system, her mother "did not do anything that was not recognized by the State Education Board." Upon re-cross, Mr. Russell stated that the JSH administration referred T.M. to FINS because of her lack of attendance and her unwillingness to attend class when she was at school. Thereafter, the defense entered "a stipulation into the record that the Iberia Parish School system took all the appropriate efforts to try to remediate the compulsory school attendance problem and was unsuccessful." The defense then submitted the case for decision after insisting that there was no need to adjudicate T.M. a truant because she was no longer in school.

Upon consideration of the record, the testimony, and the exhibits, the trial court ruled in open court that the State had carried its burden of proving that T.M. was "in violation of the compulsory school attendance laws," and it adjudicated T.M. a FINS child. Initially, the defense sought to delay the dispositional phase of

the hearing; however, it later agreed to conclude the matter that day. The State recalled Mr. Russell to the stand to elicit his opinion as to a proper disposition in this case. He noted that because of T.M.'s unwillingness to attend class, her grades were not necessarily indicative of her academic abilities. While he had not received any information from T.M.'s mother as to her progress at the CA, based upon her school records, Mr. Russell stated that some of the "social emotional concerns" exhibited by T.M. in a large classroom setting might make that environment less conducive to her ability to learn. Accordingly, he believed that a homeschool setting might provide T.M. with the "academic nurturing" necessary for her to be able to learn. Mr. Russell noted that if T.M. did not do well in homeschooling, her mom could return her to the IPSB system. He further noted that if a student enrolled in an online program did not attain the required number of hours, that student would not be allowed to move on academically. On cross-examination by the defense, Mr. Russell confirmed that T.M.'s mother had the absolute choice under Louisiana law to remove her from the IPSB and enroll her in an acceptable homeschool program such as the CA.

The next witness called by the State was Christian LaGrange, T.M.'s former counselor at JSH who had met with her on a regular basis to discuss her grades and attendance in order to help her with any accompanying social issues that were affecting her school performance. She agreed with Mr. Russell's belief that T.M. had yet to show her true academic potential and that, given her lack of motivation to attend school, she was unable to say how T.M. would do with homeschooling. In response to questions posed to her by the defense, Ms. LaGrange agreed that there were many reasons why a student might not want to attend school and that she could not say that T.M.'s poor attendance record was due to her being lazy and/or her unwillingness to do schoolwork. Ms. LaGrange also confirmed that

4

according to her understanding of Louisiana's educational law, T.M.'s mother had the absolute right to withdraw her from school and enroll her in a home study program.

Over the objection of defense counsel, the trial court sought recommendations from Ronald Rogers of the OJJ about what type of services his office could provide to T.M. Mr. Rogers stated that in a standard truancy case, when a student is put on probation with the OJJ, his office would monitor the student's grades, attendance, and behavior, along with examining the student's family dynamics and providing appropriate counseling, be it Functional Family Therapy (FFT) or Multi-Systemic Therapy (MST). Mr. Rogers was then sworn in as a witness to give the parties an opportunity to question him under oath. In answer to a question posed to him by T.M.'s attorney, Mr. Rogers stated that he did not have an official recommendation regarding T.M. because this was not the type of case normally handled by his office. On cross-examination by the State, Mr. Rogers explained that his office would monitor T.M.'s online homeschool activities, provide her with counseling not duplicative of that she was already receiving, and report back to the trial court regarding her progress. On redirect, Mr. Rogers stated that he was not aware of his office ever having monitored a student who was adjudicated a truant and who was not on probation in a non-criminal matter.

After referencing the dispositional guidelines set out in La.Ch.Code arts. 779-781, the trial court made the following disposition from the bench:

> I am persuaded from the educational records that exist on the child, as far as the function within the home is not able to receive an education as mandated an[d] required pursuant to Louisiana Law if the child remains in the home, and I am of the belief that disposition or removal of the child is necessary relative to same, I would place the juvenile in the custody of the State of Louisiana for a period of one (1) year in non-secure placement. However, for purposes of the Dispositional

Hearing, the defense is suggesting that the child has withdrawn from the Iberia Parish Educational system and has entered into Connections Academy which is apparently a home school online virtual school program in an attempt to be able to provide this child with an education as required and mandated pursuant to State law. Um, the Court, for purposes of considering dispositional guidelines in the programs that are offered is going to therefore suspend the placement of the juvenile for the period one (1) year with the Office of Juvenile Justice in a non-secure placement and place the juvenile on probation, supervised probation, with the Office of Juvenile Justice for a year and a half (1 1/2), subject to the following terms and conditions of the supervised probation, number one, I'm going to want the Office of Juvenile Justice to meet with the family weekly and obtain reports from the online educational institution which show that the juvenile is in fact matriculating successfully within the online educational program, in the event that you are not able to meet with the juvenile on a weekly basis or provide those or obtain that information on a weekly basis, then I'm going [to] want the Court to be notified within fifteen (15) days if there are any potential violation of that specific condition of its probation.

In addition to that, I also believe that it's necessary for the Office of Juvenile Justice to provide MST counseling services in the home.

The trial court ordered the OJJ to supply a probation officer to meet with T.M. and her family, in person, on a weekly basis. It also imposed a dusk-to-dawn curfew on T.M., and ordered her mother to ensure that T.M. was supervised by an adult if she left their home during her curfew.

T.M. appealed and is before this court alleging that the trial court erred: 1) in adjudicating her delinquent on the basis of truancy because she had been removed from the Louisiana public school system and enrolled in a state-sanctioned home study program and 2) in placing her under the supervision of the Office of Juvenile Justice (OJJ) for monitoring her school attendance when she was no longer attending school.

## DISCUSSION

Louisiana law requires parents of children between the ages of seven and eighteen to send their children to school and to assure that their children regularly attend classes and refrain from being habitually tardy. La.R.S. 17:221. "Solely for

purposes of compulsory attendance in a nonpublic school, a child who participates in a home study program approved by the State Board of Elementary and Secondary Education shall be considered in attendance at a day school." La.R.S. 17:236(A).

Louisiana Children's Code Article 730(1) provides that a family can be adjudicated in need of services when "a child is truant or has willfully and repeatedly violated lawful school rules." The allegation of a FINS petition must be proven by a preponderance of evidence. La.Ch.Code art. 770. Although we have found no cases which directly state the appellate standard of review of a trial court's ruling on a FINS petition, we find the following case instructive. In *State in the Interest of D.M.G.*, 579 So.2d 525, 527 (La.App. 4 Cir. 1991) (footnotes omitted but substance of footnotes included in brackets), the fourth circuit stated:

> The appellate standard of review, when a petition for delinquency is filed and a determination of delinquency is found, is the *Jackson v. Virginia*, [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] standard of "in the light most favorable to the prosecution". *State in the Interest of Rowland*, 509 So.2d 779 (La.App. 2nd Cir.1987). However, when a petition for delinquency is filed but a determination of a CINS is found, the more rational standard of review would be that imposed by *Arceneaux v. Domingue*[, 365 So.2d 1330 (La.1978)] of clearly wrong or manifestly erroneous. We reach this conclusion based upon La.C.J.P. article 71 which mandates that nondelinquent proceedings be conducted according to the rules of Civil Procedure and article 73 which establishes the burden of proof in such cases to be by a preponderance of evidence.[3]

Accordingly, we hold that the manifestly erroneous or clearly wrong standard of review is the appropriate appellate standard of review to apply in this matter.

After a family has been adjudicated in need of services, La.Ch.Code art. 779(A) gives a trial court authority to impose the following dispositional alternatives:

---

[3] The Code of Juvenile Procedure was repealed effective January 1, 1992. *See now generally* the Children's Code.

7

(1) Order the child to submit to counseling or to psychiatric or psychological examination or treatment.

(2) Order the child to cooperate in accepting particular services from any public institution or agency or from any private institution or agency willing and able to provide him with needed services.

(3) Place the child in the custody of a caretaker or other suitable person on such terms and conditions as deemed in the best interests of the child and the public.

(4) Place the child on probation on such terms and conditions as deemed in the best interests of the child and the public.

(5) Assign the child to the custody of a private or public institution or agency, except that the child shall not be placed in a correctional facility designed and operated exclusively for delinquent children, nor shall such facility accept the child.

In addition to the aforementioned dispositions, La.Ch.Code art. 779(A)(6) allows the trial court to "[m]ake such other disposition or combination of the above dispositions as the court deems to be in the best interests of the child and the public."

At the dispositional hearing, the trial court can consider all evidence offered by the state, the child, and/or his caretaker, including evidence that "would not be admissible at the adjudication hearing." La.Ch.Code art. 778. "The court shall impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society." La.Ch.Code art. 781. Moreover, "[t]he court shall not remove a child from the custody of his caretakers unless his welfare cannot, in the opinion of the court, be adequately safeguarded without such removal." La.Ch.Code art. 780.

*The Adjudication*

In her first assigned error, T.M. argues that the trial court erred in adjudicating her "delinquent on the basis of truancy" because she had been lawfully removed from the Louisiana school system by her mother with the

permission and approval of the State. T.M. also contends that the matter was moot because she was no longer at risk for being truant due to her withdrawal from JSH and her enrollment in CA, a state recognized and sanctioned homeschool program.

Initially, the State points out that this matter came before the trial court as a FINS petition rather than as a delinquency proceeding. With regard to the merits, the State contends that a juvenile and her family cannot escape the jurisdiction of a FINS court by choosing to be homeschooled. In that regard, the State submits that while Louisiana's compulsory attendance laws recognize that a child can be homeschooled, those laws do not allow a family to avoid being found in need of services. The State calls this court's attention to a December 14, 2016 Risk Indicator Survey completed by Ms. LaGrange, T.M.'s school counselor at the time, which showed that T.M. had excessive school absences, was not prepared, frequently failed to complete her homework, and had no desire to learn. The Survey also noted that T.M. was defiant, manipulative, and disruptive. More disturbingly, however, the Survey indicated that T.M. had a history of harming herself and that Ms. LaGrange had to perform a suicide assessment on her two months prior because T.M. indicated that "she wanted to die." In a FINS Referral Report dated December 14, 2016, Ms. LaGrange noted that as of that date, T.M. had a total of thirty-nine absences and her grades were five Fs and one D. The report indicated that Ms. LaGrange had conducted multiple face-to-face and telephone conferences with T.M.'s parent and that she suspected that T.M.'s behavior might be related to a mental health issue.

One of the stated purposes of Title VII of the Louisiana Children's Code, which pertains to families in need of services, is "to define self-destructive behaviors by the child and conduct by other family members which contribute to the child's harm and which warrant court intervention in the family's life so that

appropriate services to remedy the family's dysfunction can be secured." La.Ch.Code art. 726. The evidence showed that T.M. suffers from a broad range of educational, as well as emotional and social problems. Based on the record before us, we conclude that the State met its burden of proving that T.M. and her mother should be adjudicated a FINS. Thus, T.M.'s first assigned error lacks merit.

### *The Disposition*

In her second assigned error, T.M. contends that because she was no longer enrolled in a traditional school, the trial court's disposition in this case should not have included the monitoring of her school attendance by the OJJ. In that vein, T.M. submits that the disposition imposed by the trial court was overly onerous and burdensome and was not the least restrictive disposition available.

Conversely, the State contends that the trial court followed the dispositional guidelines set out in the Louisiana Children's Code. The State further points out that T.M. failed to produce any evidence regarding how the CA operated or its success rate. Likewise, the defense failed to present any witnesses, including T.M., to attest to why they believed T.M. was likely to be successful in a homeschool environment, so as to justify a less restrictive disposition.

The record is replete with T.M.'s propensities for not doing well in, much less attending, school. It also contains evidence that T.M. is a troubled teen whose family life needs to be monitored to protect her best interests. After having reviewed the entire record, including the testimony and evidence presented at the adjudication and dispositional hearing, we conclude that the trial court did not manifestly err or abuse its discretion in carving out the least restrictive disposition given the specific facts presented regarding the dysfunction of T.M. and her

family.  *See State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012.

## DECREE

For the foregoing reasons, the judgment adjudicating T.M. a Family In Need of Services child and placing her on supervised probation with the Office of Juvenile Justice is affirmed.

**AFFIRMED.**