591 So.2d 383 (1991)
STATE of Louisiana, Appellee,
v.
Willie E. CHISM, Jr., Appellant.
No. 22881-KA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1991.
Rehearing Denied January 16, 1992.
*384 Charles R. Rowe, Bossier City, for defendant/appellant.
William J. Guste, Jr., Atty. Gen., James Bullers, Dist. Atty., Robert Randall Smith, Asst. Dist. Atty., for plaintiff/appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
NORRIS, Judge.
Willie E. Chism was charged by bill of information with first degree robbery, La. R.S. 14:64.1. He was tried by jury and found guilty as charged by a vote of 10-2. He was later adjudicated an habitual offender and sentenced to 25 years at hard labor without benefit of parole, probation or suspension of sentence. He now appeals, urging the evidence was insufficient to convict and the sentence was excessive. For the reasons expressed, we find the identification evidence was insufficient. We reverse.

Factual background
The victim, Matthew Wright, was a delivery man for Pizza Hut. He testified that near midnight on January 5, 1990, he was sent to the 400 block of Watson Street (he did not recall the exact address) in Bossier City to deliver some pizzas. The area was very dark. A black man was standing in front of a house, motioning him to stop. When he stopped, he was 30 to 40 feet from any light source other than the light inside his car. There were unlighted, vacant houses to the side, all dark. Wright got out of his car and the black man (designated as Mr. "X") asked him if the pizzas were hot. Wright slid the pizzas out of the pouch and let Mr. "X" feel the boxes. Meanwhile another black man (designated as Mr. "Z") walked up from the side of the house and told Mr. "X" to have Wright pull his car into the driveway, get out and get his money. Wright did so, following Mr. "X" into the driveway carrying the pizzas. Mr. "Z" disappeared behind the house. Wright noticed a door open on the side of another house to his right, and somebody looked out briefly; the door then shut. Wright looked back, and Mr. "X" was gone too.
Wright then heard someone yell, apparently from behind the house, and he was suddenly struck in the head by a hurled object about the size of a softball. This dazed him for 15 to 20 seconds, and when he regained his bearings he realized he was bleeding. At this time Mr. "X" was "in his face," and demanded his money or else he would shoot. Mr. "X" was holding his hand in his pocket as though pointing a concealed pistol. Wright gave him the money and the pizzas. Both men (Mr. "Z" had by now reappeared) then told Wright to "get out of here." Wright did so, driving to a nearby Circle K and phoning his manager.
Wright testified he could not tell who hollered right before the attack, but he caught a glimpse of Mr. "Z" throwing the object. Because Mr. "X" got right in Wright's face, Wright could at that time see "his facial features and everything," but when he reported the incident to the police he could give no description other than that his assailants were black males. Wright never got close enough to Mr. "Z" to make an identification. He did not know either man and never saw them again.
*385 Detective Gregory of the Bossier City Police Department testified that he was involved in an investigation that "turned up the name of Willie Chism as being a suspect." The defense objected to this as hearsay. The court overruled the objection but cautioned the prosecutor not to make any reference to hearsay statements. The record does not show how Chism became a suspect. Nevertheless, on January 15 Wright was called to the police station and shown a photo line-up of suspects. He testified that he selected one photo (Exhibit S-1) as a picture of his assailant, Mr. "X." Detective Gregory corroborated that Wright had attended the photo line-up and selected a photo; he and Officer Halphen added that S-1 was a picture of the defendant, Willie Chism. The record does not indicate when this photo was taken.
However, Wright was also asked if he could identify anyone in the courtroom who was involved in the incident. The following colloquy occurred on direct examination:
Q. [T]here is a person in our courtroom whom we have charged with the crime. Do you recognize or can you recognize a person in this courtroom who was there?
A. (Pause) Not fully, no I can't. Because fromI know who the defendant is, and I know who you have. But the man that attacked me, I don't know if he's changed or whatever, but the man who attacked me had two good eyes and I can tell by looking at this man [the defendant] that one of his eyes is messed up or hurt or whatever. But I can't fully describeI mean, I can describe the guy, but I don't recognize anyone in this courtroom.

Q. Okay. Is the personbut do you remember and is it your testimony that the photograph of the person you picked out, was that the person in that photograph who was there at the scene?
A. Yes, sir.
R. pp. 58-59 (emphasis added)
On cross examination, Wright reiterated his account of the attack. He further testified:
Q. Now, after that "X" demands money from you. He was in your face, is I think, is how you put it.
A. Yes, sir.
Q. Standing right next to you?
A. Standing in front of me.
Q. Standing in front of you. And it was not Mr. Chism that is seated to my right, is it?
A. No, sir; not fromnot fromnot from his face. I mean his face is different. I don't know what's happened in the last five months or whatever.
Q. But as Mr. Chism sits here today, that's not the man is it?
A. No, sir.

R. p. 64 (emphasis added)
Wright further stated, on cross examination, that Mr. "X" had his hair cut in shaved lines on the sides, but neither Chism nor the man pictured in S-1 had those shaved lines; still, he felt S-1 resembled Mr. "X." Wright also admitted he could have made a mistake in selecting S-1 because of the circumstances of the incident. R. p. 68. Called for rebuttal, Wright reiterated that S-1 was the photo he had selected in the line-up as the robber, but he persisted in saying that Willie Chism and S-1 were not the same person. R. p. 96.
Chism testified in his own behalf. He flatly denied any involvement in the robbery. He was aware of what happened, however, because that night he was a guest at a house next to the alley where the robbery occurred. He also admitted that when they heard the disturbance, someone in the house opened the door and they looked out. Chism identified the robber as a man named Julius Thomas; his description of the incident was substantially similar to Wright's. He also testified that he (Chism) was partially blind in the right eye and totally blind in the left, as a result of a gunshot wound he received in late October or early November 1989 (about two months before this offense occurred). He testified that he wears a plastic eye, and he looked the same at the time of the incident as at the time of trial. He *386 looked at Exhibit S-1 and stated that he believed it was a picture of him but the facial coloration was too dark. R. p. 92.

Discussion
In examining a record for sufficiency of evidence, the standard of appellate review is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Long, 408 So.2d 1221 (La.1982). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Shepherd, 566 So.2d 1127 (La.App.2d Cir.1990); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.), writ denied 462 So.2d 189 (1984).
In the instant case Wright's testimony clearly establishes the essential elements of the crime of first degree robbery; in fact, Chism concedes that a robbery took place. The only issue is identification.
The state's case rested entirely on the identification derived from a photo line-up some four months before trial. However, the victim testified at trial to an equal degree of certainty that the defendant was not his assailant. He was certain that Mr. "X" had "two good eyes," while Chism obviously had a poor-fitting artificial eye. He also mentioned that Chism had a dissimilar hair style from Mr. "X"; Chism claimed to have difficulty identifying S-1 as himself, noting the difference of skin tone.
The victim's inability at trial to identify a suspect whom he had previously selected (by photo) as the robber undermines the credibility of his out-of-court identification. Such testimony is analogous to impeached testimony, which as a general rule cannot stand alone to convict. State v. Laprime, 437 So.2d 1124 (La.1983); State v. Lott, 535 So.2d 963 (La.App.2d Cir.1988). With no other evidence to name Chism as a participant in the offense, and trial testimony that absolves him, the prior out-of-court identification is simply insufficient to negate the reasonable possibility of misidentification. State v. Brady, supra. Even viewed in light most favorable to the state, Wright's testimony amounts to an internal contradiction on the critical issue of the case. State v. Shepherd, supra.
Furthermore, no evidence was introduced to explain the discrepancy or buttress the validity of the prior identification. The prosecutor argued that Chism could have lost his eye after the robbery, while he was in jail. Chism testified, however, that he lost his eye before the robbery. The state did not contradict this, even though the state would surely have disciplinary records of inmate fights and medical records of inmates who sustained serious injuries. In addition, a photo of Chism taken at the time of his booking for this offense could have shown his appearance within a few days of the crime. The state also offered no evidence about how Chism came to be included among suspects. Any of these facts, if introduced, might have explained the inconsistency and negated the possibility of misidentification.
On the record as it stands, however, the out-of-court, unsworn, photo identification was fatally weakened when the victim subsequently testified at trial that the defendant was not the perpetrator, and admitted that his photo identification could have been mistaken because of the circumstances of the incident. There is no other evidence to prove this defendant committed the offense. Given these facts, the evidence is not sufficient to persuade a rational trier of fact beyond a reasonable doubt that the defendant was indeed the perpetrator.
The conviction and sentence are therefore reversed. Willie Chism is ordered discharged from this offense.
REVERSED.
*387 HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, Judge, concurring.
Our verbosity often causes misinterpretation.
The circumstances of this case are unusual, yet quite simple: The victim testified that the individual in the photo robbed him but, without equivocation, that the individual seated in the courtroom did not.
I concur in the reversal.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, HIGHTOWER, VICTORY and STEWART, JJ.
Rehearing denied.