651 So.2d 387 (1995)
STATE of Louisiana, Appellee,
v.
Lionel TONEY, Appellant.
No. 26711-KA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
*389 Hunter, Scott, Blue & Johnson by Robert C. Johnson, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Jerry L. Jones, Dist. Atty., Douglas R. Haynes, II, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, C.J., LINDSAY, J., and PRICE, J. Pro Tem.
LINDSAY, Judge.
At the conclusion of his jury trial, the defendant was found guilty as charged of armed robbery. The trial court imposed a sentence of 22½ years at hard labor, without benefit of probation, parole or suspension of *390 sentence. The defendant appealed. For the reasons assigned below, we affirm the defendant's conviction and sentence.

FACTS
Shortly after 3 a.m. on October 20, 1991, the defendant and an accomplice entered the Cracker Barrel store at 2000 Jackson Street in Monroe. The defendant asked the store attendant, Randy Jackson, whether he had a particular magazine behind the counter. Mr. Jackson turned around to check; when he turned back toward the men, the defendant grabbed him from across the counter and placed a knife to his throat. The defendant ordered him not to move. In the meantime, the accomplice grabbed two 24-can packs of beer and fled from the store. The defendant then released Mr. Jackson and ran outside. Mr. Jackson saw the two men get into a car with a third man and drive away.
Mr. Jackson immediately contacted the police. Officer James Clark of the Monroe Police Department was the first officer to respond to the call. Mr. Jackson, who was still "very nervous and excited" following the incident, was only able to give him a "vague" description of the suspects, although he did tell the officer that the man who pulled the knife on him had a scar on his right hand. After hastily making some notes, Officer Clark began searching the area of the store for the getaway car. However, no suspects were arrested that night.
On October 22, 1991, Detective William T. Webb spoke to Mr. Jackson at his residence. Mr. Jackson, who was calm and composed, was able to provide a more detailed descriptions of the robbers. He described the assailant with the knife as being a black male with a medium complexion, who appeared to about 18 years old, 5'8", and 160 pounds. His hair was cut close on the sides with a triangular design cut in the back, and he also had a three to four inch scar on the top of his right hand. Mr. Jackson also informed the detective that he had seen this man in the store about two weeks before the robbery. (Although this fact was concealed from the jury, the defendant had apparently been arrested for shoplifting at that time.)
Using this information, Detective Webb assembled a photo lineup which included a photograph of the defendant. Subsequently, Detective David Harris showed the photo lineup to Mr. Jackson, who identified the defendant as the man who had held the knife to his throat.
The defendant was arrested and charged with armed robbery. After a jury trial, he was convicted as charged.
Originally, the defendant was sentenced, as a second felony offender, to a term of imprisonment of 49½ years at hard labor, without benefit of probation, parole or suspension of sentence. However, the state eventually dismissed the habitual offender bill because of problems concerning the validity of the predicate conviction. The defendant was resentenced to a term of 22½ years at hard labor, without benefit of probation, parole or suspension of sentence. The trial court also gave him credit for time served.
The defendant appealed his conviction and sentence. Although he originally filed 12 assignments of error, he specifically abandoned five of them in his brief. Three assignments of error concern the defendant's sentence and will be addressed together.
Additionally, another assignment requested that we review the record for error patent; however, such a review is automatic in all criminal appeals. Our examination in the instant case revealed no error patent.

BATSON CHALLENGES
The defendant contends that the trial court erred in denying his Batson objections to the state's use of peremptory challenges against several black members of the jury venire.
An equal protection violation occurs if a party exercises a peremptory challenge to excuse a prospective juror on the basis of that person's race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and its progeny. The defendant need no longer show that he is a member of this excluded class. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). If the defendant makes a prima facie showing of discriminatory peremptory strikes, the burden shifts to the state to offer race-neutral *391 explanations for the challenged jurors. State v. Bourque, 622 So.2d 198 (La.1993). See also State v. Collier, 553 So.2d 815 (La. 1989); LSA-C.Cr.P. Art. 795(C).
A successful Batson argument requires the defendant to make a prima facie case of race-based exclusion, i.e., that the pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members of a cognizable racial group solely on the basis of race. State v. Collier, supra; State v. Tucker, 591 So.2d 1208, 1215 (La.App.2d Cir. 1991), writ denied, 594 So.2d 1317 (La.1992).
The trial judge must determine whether the defendant has established the requisite prima facie case. Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings are entitled to great deference by a reviewing court. Collier, supra.
In the present case, the defendant contends that the state used peremptory challenges against eight black prospective jurors. In support of this contention, the defendant listed the names of eight persons in his brief. However, we note serious discrepancies as to three of the named individuals which remove them from consideration of this Batson challenge.[1] Furthermore, even though the record does not reflect the ultimate racial composition of the jury, the trial court noted at one point that the state had accepted several black jurors. (In brief, the state asserts that four members of the jury were black.)
The defendant asserted Batson challenges at three different points during voir dire. On each occasion, the trial court found that there was no evidence of a systematic exclusion of any jurors due to race. Although the trial court found the defendant had not made a prima facie showing of discrimination, it allowed the state to set forth on the record reasons for its use of its peremptory challenges. Additionally, our review reveals that the prospective jurors enumerated by the defendant in brief were peremptorily challenged for racially neutral reasons. Aaron Paul's cousin had been murdered, and he had previously been accused of a crime where identification was a factor. Ruth L. Jackson, Mary L. Hall, and Gerald L. Deburr all showed an inability to grasp certain legal concepts; additionally, there had been a murder involving someone in Ms. Hall's family. Kathy C. Goldston showed a strong predisposition against law enforcement.
The trial court's determination that there was no purposeful discrimination involved credibility evaluations and is entitled to great deference. Our review of the record reveals no error in its finding.
This assignment of error is meritless.

PHOTO LINEUP
The defendant asserts that the trial court erred in admitting state's exhibit # S-1, the photo lineup from which Mr. Jackson identified the defendant. At trial, the defendant argued that the state failed to lay the proper foundation for admission of the photo lineup into evidence and that it was unduly suggestive. After Detective Webb was recalled to testify about the foundation for introducing the photo lineup, the defendant also asserted that the exhibit was irrelevant; that, even if relevant, it was cumulative of other evidence and hearsay; that it was not authenticated or the best evidence of identity; and that it made defendant look like he had committed another offense. The trial court overruled the defense objections and admitted the exhibit into evidence.
On appeal, he also argues for the first time that the photo allegedly shows the defendant wearing a "jail collar." However, a new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920, 924 (La.App.2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987); LSA-C.Cr.P. Art. 841.

*392 Law
A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there is a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Cotton, 511 So.2d 1207 (La.App.2d Cir.1987). A lineup is unduly suggestive if the procedure focuses attention on the defendant. State v. Tucker, supra; State v. Cotton, supra.
To admit demonstrative evidence at trial, the object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Caston, 583 So.2d 42 (La.App.2d Cir.1991), writ denied, 585 So.2d 575 (La.1991); State v. Anderson, 554 So.2d 133 (La.App.2d Cir.1989).
All relevant evidence is generally admissible. LSA-C.E. Art. 402. Relevant evidence is that which tends to show any fact of consequence to the charge. LSA-C.E. Art. 401. A trial judge is vested with wide discretion in determining relevancy of evidence; his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981).

Discussion
Contrary to the assertions of the defendant, the photo lineup was relevant to show identity, and it was not cumulative evidence of how the original identification was made. It was not a statement and therefore not hearsay. Also, it did not have to be authenticated because the only proof required was a finding that it was what its proponent claimed. LSA-C.E. Art. 901. The lineup itself was the best evidence of what the victim identified.
The foundation laid by the state in the present case was sufficient. Detective Webb testified that he prepared the photographic lineup; he identified it in court, and he explained that he put it together by looking for photographs of persons whose appearances were similar to ensure that one "won't stick out like a sore thumb." Detective Harris testified that he received the photo lineup from Detective Webb and showed it to Mr. Jackson, who identified the defendant.
Regarding the issue of suggestiveness, Detective Webb testified that he tried to find individuals whose appearances were very similar to that of the defendant. Detective Harris testified that he didn't do anything to influence Mr. Jackson as to who to identify. Mr. Jackson made the identification very quickly, noting that there was a slight difference in the hair style. Mr. Jackson testified that Detective Harris did not do anything to suggest who he should pick out. Consequently, we find that there is no evidence that the photo lineup was unduly suggestive.
Regarding the contention that the photograph showed the defendant had committed another crime, at trial defense counsel agreed to move the pictures on the photo lineup so the jurors could not see the booking numbers at the bottom of each photograph. After that alteration, the jurors saw only the faces, and defense counsel said he had no problem with the depiction. Thus, with defense counsel's agreement, the photographs were re-mounted to be displayed so as to show only a group of black males against a background.
This assignment of merit has no merit.

SUFFICIENCY OF EVIDENCE
The defendant also contends that the jury's verdict was contrary to the law and the evidence. Specifically, he argues that the only evidence connecting him to the offense was the uncorroborated and inconsistent testimony of the store attendant, that the alleged weapon was never recovered, and that he had an alibi established by the testimony of two relatives.

Law
Armed robbery is the taking of anything of value belonging to another from the person *393 of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Taylor, 422 So.2d 109 (La.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983). LSA-R.S. 14:2(3) defines "dangerous weapon" as any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm.
If property is taken from the victim's presence by intimidation with a weapon, it is sufficient to sustain a conviction for armed robbery. State v. Refuge, 300 So.2d 489 (La.1974). To establish robbery, the property must be sufficiently under the victim's control that, absent violence or intimidation, the victim could have prevented the taking. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Doan, 519 So.2d 174 (La. App. 4th Cir.1987), writ denied, 532 So.2d 145 (La.1988).
The fact that the weapon was not recovered is not a fatal failure of proof. See State v. Brown, 588 So.2d 1317 (La.App.2d Cir.1991), writ denied, 592 So.2d 1298 (La. 1992).
When assessing the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged and the defendant's identity as the perpetrator of that crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Where there is conflicting testimony in factual matters, the issue of credibility of witnesses is within the sound discretion of the trier of fact and should not be disturbed on review unless clearly contrary to the evidence. State v. McKnight, 539 So.2d 952 (La.App.2d Cir.1989), writ denied, 548 So.2d 322 (La.1989).
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La. App.2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, 628 So.2d 27 (La.App.2d Cir.1993), writ denied, 94-0018 (La. 3/25/94), 635 So.2d 236; State v. Braswell, 605 So.2d 702 (La.App.2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App.2d Cir.1986).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982); State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991); State v. Ford, 26422, (La.App.2d Cir. 9/21/94), 643 So.2d 293.

Discussion
The defendant's argument is essentially an attack against the victim's credibility. He argues that the evidence was insufficient because the victim's testimony was full of "irreconcilable inconsistencies" and was not corroborated.
Any inconsistencies appear to be between the quickly written and disorganized notes taken by Officer Clark, the first officer to arrive at the crime scene, and the victim's recollection of what he told the officer, not internal contradictions in Mr. Jackson's testimony. It is noteworthy that when Mr. Jackson gave the first description to Officer Clark, he was still visibly shaken from his ordeal. Nonetheless, he was able to give the police a general description of the robbers which was consistent with the description he was able to provide two days later to Detective Webb after he had had an opportunity to calm down. Additionally, even his initial description to Officer Clark included a scar on the right hand of the knife-wielding assailant.
The identity of the defendant as the robber is the key issue in this assignment. Reliability, as shown by the totality of the circumstances, is the linchpin when deciding *394 admissibility of identification testimony. Identification testimony will be admissible if found to be reliable under the total circumstances. State v. Tucker, supra. Here, the victim gave a general description of the robbers immediately after the robbery, including a distinctive scar on the right hand of one of the robbers. The defendant bore the same scar at trial. The non-suggestive lineup identification corroborated the victim's testimony.
The jury observed the witnesses, including the defendant's alibi witnesses, and made certain credibility determinations. The victim's testimony established the elements of taking and that the taking was done by use of force and violence with a knife. The victim made a positive, valid identification of the defendant as the robber. Based upon the evidence presented, the jury made a rational determination that the proof of the defendant's guilt was beyond a reasonable doubt.
This assignment of error is without merit.

SENTENCE
The defendant asserted three assignments of error concerning his sentence. Specifically, he argues that the trial court erred by: (1) failing to comply with LSA-C.Cr.P. Art. 894.1 at sentencing; (2) imposing an excessive sentence; and (3) denying his motion for reconsideration.
However, as to the last contention, we note that the only motion for reconsideration filed by the defendant concerned his first sentence of 49½ years at hard labor. The defendant did not move for reconsideration following the imposition of the second sentence of 22½ years at hard labor. Furthermore, the defendant does not specifically address this issue in his brief. A mere restatement of an assignment of error in a brief, without argument or citation of authority, does not constitute briefing of the assignment, and the assignment is deemed abandoned. State v. Williams, 632 So.2d 351 (La.App. 1st Cir.1993), writ denied, 94-1009 (La. 9/2/94), 643 So.2d 139. Therefore, the defendant's assignment of error pertaining to denial of a motion for reconsideration is deemed abandoned.
In support of the two remaining assignments of error, the 21-year-old defendant argues that he had a "slight" juvenile record and one prior felony as an adult, and thus shouldn't be characterized as a "major criminal offender with no hope of rehabilitation." He also points out that the store attendant was not injured and no money was taken in the robbery. In its brief, the state argues since the sentence imposed was the minimum recommended in the designated grid cell of the Felony Sentencing Guidelines, it was not excessive.
When a trial judge imposes a sentence within the designated range of the sentencing grid, he need only put on the record the sentence, the proper grid cell for the sentence imposed, and how he determined that the cell selected was appropriate. La.S.G. § 201(B) and (C). State v. Barnes, 607 So.2d 872 (La.App.2d Cir.1992).
A sentence imposed within the range recommended by the designated grid cell is appropriate for an offender with that criminal history and is not excessive under the Louisiana Constitution. State v. Essex, 618 So.2d 574 (La.App.2d Cir.1993); La.S.G. § 201(C).
In the instant case, the trial court adequately explained how he arrived at the proper grid cell. The judge noted that the guidelines presentence report showed a crime seriousness level of 1, and a criminal history index of 4.75. [Armed robbery is a level 1 offense. Two convictions for simple burglary are 2 points each, and three misdemeanors are .25 points each, for a total of 4.75.] That yielded grid cell 1-B, which recommended a sentence of 22½ to 25 years. The sentence imposed upon the defendant was the minimum in the recommended range.
Accordingly, these assignments of error are without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] First, the record shows that Carey Etier actually served on the jury and voted to convict the defendant. Second, Bruce Thorn is referred to in the minutes as having been challenged for cause. Third, the record demonstrates that Marcus Jorrell Lowery (incorrectly referred to by the defendant as Marcus Jarrell) was a white male.