662 So.2d 798 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
John C. THOMAS, Defendant-Appellant.
No. 27504-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
*799 Indigent Defender Board by Allan R. Harris and John Lawrence, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, H. Ted Cox and Tommy J. Johnson, Asst. District Attorneys, Shreveport, for Appellee.
Before NORRIS and BROWN, JJ., and CLARK, J. Pro Tem.
NORRIS, Judge.
John C. Thomas was charged by bill of information with possession of a firearm by a convicted felon, La.R.S. 14:95.1. After a 12-member jury found him guilty as charged, the district court sentenced him to eight years at hard labor without benefit of parole, probation or suspension of sentence, and a fine of $1,000. Thomas now appeals his conviction and sentence. We affirm.

Factual background
Thomas, age 48 at the time of the offense, was the estranged boyfriend of Mary Banks and father of her 16-year old son. Some two weeks prior to November 26, 1993, Mary asked Thomas to move out of her house. He did so, taking all his belongings except a dog. On the evening of November 26, Thomas returned to the house to feed the dog. Mary let him do so, and afterward he came in the house to wash his hands. Mary had several guests in the house, including her friends Barbara Banks, Mary Jo Williams and Governor Floyd. When Thomas came in, he got angry at seeing Floyd there; he started an argument with the comment that Floyd was "her boy." Both Barbara Banks and Mary Jo Williams testified that Thomas appeared to have a gun in his pocket, as he repeatedly placed his right hand in his pants pocket; Ms. Williams added that he seemed to "pick up" something in the pocket. Mary tried to call the police, but Thomas took the receiver from her and hung up the phone. Eventually, however, Mary persuaded Thomas to leave. He did so without incident.
A few minutes later, Mary Jo Williams and Governor Floyd also started to leave. As they were getting into the car, they noticed Thomas walking back toward Mary's house. As he passed under a street light, Ms. Williams saw a gun in his hand. She wanted to shout a warning to Mary and Barbara Banks inside, but was afraid Thomas might shoot her. She and Floyd decided to drive to a phone and call the police. As they left, she saw Thomas at the front porch.
Mary and Barbara Banks, still inside the house, heard a knock at the door. Barbara went to the door; they heard Thomas's voice. Mary told Barbara, "Don't open it." Barbara complied. The women then heard a noise which Mary described as Thomas slamming shut the screen door, and Barbara said must have been Thomas kicking a little chair off the porch.
Seconds later, they heard gunfire. Barbara testified that one bullet went right past her, into a wall. They took cover and called the police, who arrived in about 10 minutes. Barbara heard a total of three shots; Mary heard five.[1]
*800 Officer B.W. Strange of the Shreveport Police Department testified that Thomas was arrested in Bossier City, transported to jail in Shreveport and given Miranda warnings. He gave a statement admitting that he had been present at Mary Banks's house twice that day, but said the second time, when he was standing on the front porch, a car drove by and fired shots. Fearing he was being shot at, Thomas said he fled the scene. He could not identify the drive-by car. He denied that he had a gun. The police never recovered a weapon.

Discussion: Sufficiency of evidence
By his first assignment, Thomas urges the state failed to prove beyond a reasonable doubt that he was previously convicted of a felony enumerated in La.R.S. 14:95.1. Specifically he contends that the bills of information and court minutes, introduced as Exhibits S-1 through 4, bear no identifying information other than the name "John Charles Thomas"; and that the "pen pack," a prison record introduced as Exhibit S-5, also lacked independent verification that any of its component documents were the same as those listed in S-1 through 4. In support, he cites State v. Curtis, 338 So.2d 662 (La.1976), which holds that the mere "identity of name of defendant and the person previously convicted" is not sufficient to establish identity in a multiple offender prosecution. He also cites State v. Brown, 496 So.2d 417 (La.App. 4th Cir.1986),[2] which holds that certified copies of a bill of information and minute entry of conviction for a person having the same name as the defendant are not adequate to prove the defendant is the same person previously convicted of the offenses charged in the certified documents.
The standard of appellate review for sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cotton, 25,940 (La.App.2d Cir. 3/30/94), 634 So.2d 937. The Jackson standard applies to cases involving both direct and circumstantial evidence. State v. Sutton, 436 So.2d 471 (La.1983).
To convict a defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that he was previously convicted of one of the felonies enumerated in La.R.S. 14:95.1.[3]State v. Husband, 437 So.2d 269 (La.1983); State v. Lewis, 535 So.2d 943 (La.App. 2d Cir.1988), writ denied 538 So.2d 608 (1989), cert. denied 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1990).
The State introduced Caddo Parish bills of information charging John Charles Thomas with attempted murder and simple robbery, and certified copies of Caddo Parish court minutes from the dates on which John Charles Thomas pled guilty and was sentenced on these offenses. He received sentences of 20 and five years at hard labor, to run concurrently. Diane Doughty, a Caddo Parish Deputy Clerk of Court, testified that certified copies of these documents are sent to the Department of Corrections; Jane Baker, a records manager with the Department, testified that the information is included in *801 each inmate's "pen pack" or master prison record.
The pen pack for John Charles Thomas was introduced as Exhibit S-5. Ms. Baker also testified that after his commitment to Angola Prison in 1970, John Charles Thomas was paroled in October 1975; imprisoned again in March 1982 for parole violation; escaped from prison in October 1982 and was recaptured in November 1984; returned to Wade Correctional Center in June 1987; and finally released from Wade in May 1991. The pen pack included a photo of John Charles Thomas, with his DOC number, as well as three sets of fingerprints, taken March 3, 1982, June 3, 1987 and May 14, 1991 (corresponding with Thomas's return to Wade on parole violation, his return to Wade after the escape, and his discharge). The prints were introduced separately as Exhibit S-7. Ms. Baker testified that she recognized Thomas, having seen him on "call-out" and processed him when he was released, and that S-5 was his master criminal record.
Caddo Parish Sheriff's Deputy Owen McDonnell was tendered and accepted as a fingerprint expert. During trial he obtained inked impressions of Thomas's fingerprints, introduced as Exhibit S-9. He compared them with the three sets of impressions in Exhibit S-7 and testified that they were all made by Thomas.
This evidence easily satisfies the requirements of State v. Curtis, supra. The court in Curtis stated:
Various methods of proof to establish identity have been recognized. We do not consider that identity of name of defendant and the person previously convicted is sufficient evidence of identity. Identification of the accused may be by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in the duly authenticated record.
338 So.2d at 664 (emphasis added)
Although Thomas contends that nothing in the pen pack independently verifies that the fingerprints therein are his, our review of the evidence shows such is simply not the case. In fact, Ms. Baker recognized and identified him as the subject of the pen pack, Exhibit S-5, and Dep. McDonnell positively proved that the fingerprints from the pen pack matched Thomas's taken in open court. The jury was able to see the photo in the pen pack and compare it with Thomas. Moreover, the Caddo Parish recordsbills of information, minutes of guilty plea and sentencingshow that he was charged, pled guilty and received concurrent sentences of 20 and five years for attempted murder and simple robbery in 1970; these dates, docket numbers and details are exactly reproduced in the pen pack. In short, the evidence is sufficient to prove identity beyond a reasonable doubt, just as it was in State v. Curtis, supra.
Thomas further urges that State v. Brown, supra, mandates reversal. In that case the identity evidence consisted of a bill of information, minute entries, and an arrest register with Leonard Brown's fingerprints and a handwritten notation of the docket number on back. The State tried to prove that the docket number on the arrest register matched that on the court minutes for the conviction, and the prints on the register matched the defendant's taken in open court. The court of appeal found that the notation of docket number was inadmissible hearsay since the officer who produced the arrest register was unable to testify who made the notation or what it meant. As the notation was the only link between the arrest register, copies of the bill of information and court minutes, and fingerprints, the court found it insufficient to prove identity. In the instant case the prison records were corroborated by district court records, lay testimony, and personal identification. Finally, the fingerprints matched. Under these facts, the jury was entitled to find that defendant John C. Thomas was the same person as the John Charles Thomas who was previously convicted of attempted first degree murder and simple robbery. See State v. Armstead, 542 So.2d 28 (La.App. 4th Cir.1989), writ denied *802 566 So.2d 391 (1990).[4] This assignment does not present reversible error.

Excessive sentence
By his second assignment Thomas urges the district court imposed an excessive sentence. He concedes that he was in Grid Cell 5A, with a range of five to six years, but contends the court improperly considered various aggravating factors. These include the finding that Thomas's conduct created a risk of death or great bodily harm to more than one person, and that he had an extensive criminal record. He urges that the evidence simply does not establish that the shots fired into Mary Banks's house exposed either her or Barbara Banks to a risk of great bodily harm, and that most of his convictions since 1980 have been for nonviolent offenses, thus belying any finding that he poses an unusual danger.
Under the Felony Sentencing Guidelines in effect at the time of Thomas's sentencing,[5] a district court had complete discretion to impose any sentence within the statutory sentencing range for the crime of conviction. State v. Smith, 93-042 (La. 7/5/94), 639 So.2d 237 (on rehearing). The court need only consider the Sentencing Guidelines and state for the record the considerations taken into account and the factual basis for sentence. La.C.Cr.P. art. 894.1; State v. Smith, supra. One valid aggravating circumstance was sufficient to support an upward departure. State v. Tate, 25765 (La. App. 2d Cir. 2/23/94), 632 So.2d 1213; State v. Sanford, 27268 (La.App.2d Cir. 8/23/95), 660 So.2d 555. When the district court complied with these requirements, appellate review of a sentence above the recommended range was limited to constitutional excessiveness. Id. A sentence violates La. Const. art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Richardson, 545 So.2d 714 (La.App.2d Cir.1989).
The instant record easily shows that the district court considered the guidelines. Although the court did not itself state the grid cell, it obviously accepted both parties' grid cell calculation and replied that an upward departure was warranted. This is adequate compliance under State v. Smith, supra. Moreover, the district court properly found that Thomas's conduct in firing the gun into the house makes the case more serious than if he had merely possessed the firearm. This supports the upward departure.
Under R.S. 14:95.1 B, any felon convicted of possessing a firearm shall be imprisoned at hard labor for not less than three nor more than 10 years without benefit of probation, parole or suspension of sentence, and be fined not less than $1,000 not more than $5,000. In view of the senselessly violent conduct in this case, coupled with a criminal record dating back nearly 30 years, the instant sentence of eight years at hard labor does not shock our sense of justice. State v. Bonanno, supra. It is certainly comparable to the offenses and offenders who received eight-year sentence in State v. Stills, 600 So.2d 134 (La.App. 2d Cir.1992), and State v. Vailes, 564 So.2d 778 (La.App. 2d Cir.1990). This assignment does not present reversible error.

Error patent review
In reviewing the record for error patent, La.C.Cr.P. art. 920(2), we note that the district court advised Thomas of the three-year prescriptive period for filing post conviction relief, but did not advise when this prescriptive period starts to run. La.C.Cr.P. art. 930.8. The district court is directed to give Thomas written notice in conformity with art. 930.8 within 10 days of the rendition of this opinion and to file Thomas's receipt of the notice in the record of the proceedings. State v. Cox, 604 So.2d 189 (La.App. 2d Cir. *803 1992); State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992). We find nothing else we consider to be error patent.

Conclusion
For the reasons expressed, John C. Thomas's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] A "Property Supplement" to the initial police report noted two bullet holes through a kitchen window pane and one through two dining room window panes. R. p. 32.
[2] Writ granted and remanded, 501 So.2d 202 (La.1987); appeal after remand, 504 So.2d 639 (La.App. 4th Cir.), writ denied 507 So.2d 224 (1987).
[3] The felonies include first or second degree murder, manslaughter, aggravated battery, aggravated, forcible or simple rape, aggravated crime against nature, aggravated kidnaping, aggravated arson, aggravated or simple burglary, armed, first degree or simple robbery, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, purse snatching, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes. La. Acts 1992, No. 403, § 1.
[4] Writ granted in part and denied in part, 589 So.2d 1050 (1991), writ denied 592 So.2d 1312 (1992).
[5] The Felony Sentencing Guidelines were repealed by La. Acts 1995, No. 942, § 3, effective August 15, 1995.