677 So.2d 1008 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Brian Keith POWELL, Defendant-Appellant.
No. 27,959-KA.
Court of Appeal of Louisiana, Second Circuit.
April 12, 1996.
Opinion Clarifying Decision on Rehearing June 26, 1996.
Walter F. Clawson, Shreveport, for Defendant-Appellant, Brian Keith Powell.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Whitley R. Graves, Asst. District Attorney, for Plaintiff-Appellee.
Before NORRIS, BROWN and STEWART, JJ.
*1009 NORRIS, Judge.
Brian Keith Powell appeals his conviction and sentence on two counts of armed robbery and two counts of second degree kidnaping, La.R.S. 14:64, 44.1. He briefs 14 assignments of error,[1] chiefly contesting the admission of a recorded statement by Zelwannica Coleman, one of the two women who lured the victims to a Bossier City motel in furtherance of the crimes.[2] Because we find the evidence legally insufficient to sustain the conviction, we reverse and enter an order of acquittal.

Applicable legal principles
When the defendant raises issues both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence, including the evidence which the defendant claims was erroneously admitted. The reason for this methodology is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably find all the elements of the offense beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992).
In cases involving a defendant's claim that he was not the perpetrator of the crime, or where he remains silent, the Jackson rationale requires the State to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. State v. Shepherd, 566 So.2d 1127 (La.App.2d Cir.1990); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.), writ denied 462 So.2d 189 (1984).
In Louisiana, proof that a person of the same name has been previously convicted (or, by analogy, named as the perpetrator) does not constitute prima facie evidence that the two persons are the same. City of Monroe v. French, 345 So.2d 23 (La.1977). The State must additionally offer proof that the accused is the same person as the defendant previously convicted. Identification of the accused may be by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs in the duly authenticated record. State v. Curtis, 338 So.2d 662 (La.1976); State v. Thomas, 27,504 (La.App.2d Cir. 11/1/95), 662 So.2d 798.

Factual background
The victims, Gilliam and Moch, testified that they went to the Motel 6 in Bossier City late on the evening of December 30, 1993 at the invitation of Zelwannica Coleman and Umekia Kimble; the victims hoped to "kick it" with the women.[3] All four met in a downstairs room for a few minutes. When Gilliam and Ms. Coleman left to go upstairs, they were accosted by a number of armed and hooded men who threw them to the ground and tied them up with duct tape; they put tape over Gilliam's eyes and removed him from the motel.[4] Moments later the men went downstairs, seized and tied up Moch with duct tape. The assailants placed the victims in separate vehicles. They robbed Gilliam, drove him to Shreveport and eventually released him. In the other vehicle *1010 Moch was robbed and taken to a house in Shreveport where he told his assailants they could get money and drugs. They brought him to the front door but Moch escaped into the house. Moch's assailants fired two shots through the door, then fled.
Neither Moch nor Gilliam knew or recognized any of their assailants; they both testified that the men did not address each other by name on the night of the crime. However, because Gilliam knew Ms. Coleman and Ms. Kimble, who had invited him to the motel, the police identified and arrested them. At the Bossier City jail on January 3, Ms. Coleman received her Miranda rights and declined to give a statement. After several days of persistent requests by her aunt, Ms. Johnson, police allowed Ms. Coleman to meet with Ms. Johnson privately in the detectives' office on January 10. Moments after this meeting, Ms. Coleman waived her rights and gave a statement admitting she had acted as a "lure" to draw Gilliam and Moch away from their house and into the motel, where they could be robbed.
Although Ms. Coleman's bond had been set at $100,000 per charge, officers arranged for her release on her own recognizance. A few days later her remains were found in Caddo Parish, an apparent homicide. She was thus unavailable for trial, and in pretrial proceedings her statement was found to be admissible as a statement against penal interest, La.C.Ev. art. 804 B(3).

Discussion
By his fourth assignment Powell urges the evidence was insufficient to support the conviction. Both the victims, Gilliam and Moch, testified that their attackers were wearing ski masks, so they could not see their faces. Both also testified they did not know Powell. Moch stated that he later spoke on the phone to someone with a deep voice like one of the assailants', and that his friends told him the person was "Keith," but Moch would not know that person by sight and was not sure the voice was exactly the same. None of the codefendants testified. The only direct evidence linking Powell to the crime was Ms. Coleman's statement; according to Detective Presley, who interviewed her, it "broke the case."
In the statement, Ms. Coleman said that she and Ms. Kimble were supposed to get the victims to the motel "so that Keith and Adrian and Pratt and Broderick can all rob them." She said the initial plan was devised "by Keith Powell," who was "I guess you could say a boyfriend[.]" R. p. 378.[5] After this, Detective Presley repeatedly referred to the suspect as "Mr. Powell" or "Keith Powell." She made one further reference to "Keith Powell" and two to "Keith." R. pp. 391, 382, 386-387. Trying to develop the identity of "Keith Powell," Detective Presley asked her the following question:
Q. Do you know the address of Mr. Keith Powell?
A. No, I don't know his address. I don't even know whatI just know where he work. And he work for his mom on, I don'tit's a nursing home off off North Market. I don't know the name of it. Start with an "S." I can't really remember now. I know the number to it, but I don't know the name of it.
Detective Presley did not present her any photograph or mug shot to identify, and did not ask her for a description or other identifying information of "Keith Powell." At trial, the prosecutor asked Detective Presley what information he had or acted on to identify "Brian Keith Powell," but defense counsel raised a hearsay objection; the court admonished Detective Presley, "Don't testify what someone else may have told you." The prosecutor rephrased the question; Detective Presley established that he confirmed that the mother of the person mentioned in Ms. Coleman's statement was connected with a nursing home. R. p. 395. The State presented no evidence to confirm defendant Brian Keith Powell's mother's alleged connection with that establishment.
The only other identity evidence was Detective Presley's testimony that he first encountered the defendant when he surrendered to the police, and at that time he *1011 identified himself as Brian Keith Powell. R. p. 396.
After close consideration we are constrained to find that this evidence does not negate the reasonable possibility of misidentification. State v. Brady, supra; State v. Chism, supra. Ms. Coleman's statement names "Keith" or "Keith Powell" as the instigator of the criminal scheme; one witness's positive identification of the defendant as the perpetrator of the offense may be sufficient identity evidence. State v. Shepherd, supra; United States v. Seals, 987 F.2d 1102 (5th Cir.1993). However, Ms. Coleman's statement gives no objective description, even though such could be expected from the suspect's girlfriend. Detective Presley's testimony positively shows that the person he booked was named "Brian Keith Powell" and that this person was present in court as the defendant. However, the record is devoid of evidence to show that the defendant, who surrendered to Detective Presley under the name of "Brian Keith Powell," was the same person as the "Keith Powell" that Ms. Coleman incriminated in her recorded statement. In light of the text of the statement, admissible corroborative evidence could have been adduced, as by calling the defendant's mother to verify her son's or her own employment; the manager of the unnamed nursing home could also have established these facts, as well as verifying that his business was indeed located "off North Market." Other evidence to prove identity could have been provided by showing Ms. Coleman, on January 10, a mug shot or photographic lineup. She could also have been detained until the suspect was in custody for a live line-up, or until a preliminary examination to perpetuate her testimony.[6] Also, methods of proving identity in habitual offender and similar proceedings could have been pursued. State v. Curtis, supra; State v. Thomas, supra.
Given the fact that Ms. Coleman died shortly after giving her statement and was thus unavailable to identify the suspect properly, it was incumbent on the State to produce evidence negating the reasonable possibility of misidentification. State v. Brady, supra. Even viewed most favorably to the State, the evidence presented is simply insufficient to discharge the burden of proof under Jackson v. Virginia, supra. For this reason, we are obligated to reverse the conviction.

Conclusion
For the reasons expressed, Brian Keith Powell's conviction and sentence are REVERSED and an ORDER OF ACQUITTAL is entered.
REVERSED; ORDER OF ACQUITTAL ENTERED.
BROWN, J., dissents with reasons.
BROWN, Judge, dissenting.
Although the two victims in this case were involved in nefarious drug dealings, there is no question that gang-styled armed robberies and kidnappings occurred. In determining sufficiency of evidence, this court must review all of the evidence admitted, even that which might have been erroneously introduced, in the light most favorable to affirm the guilty verdict. We do not reweigh the evidence, nor do we judge credibility. The applicable standard used by an appellate court to review sufficiency of proof is whether there exists evidence from which a rational juror could have found the elements of the offense proven beyond a reasonable doubt. The identity of defendant as the perpetrator of the crimes charged is likewise subject to this same Jackson v. Virginia review standard. If the majority opinion is suggesting a different and higher review standard for sufficiency of proof of identification, then I must disagree.
Zelwannica Coleman's statement to the police was admitted as substantive evidence. Ms. Coleman identified "Keith Powell" as her boyfriend and as the person who initiated the conspiracy and obtained her cooperation. Ms. Coleman knew that Powell worked with his mother at a nursing home off North Market. Detective Presley stated that he confirmed the accuracy of this information. *1012 I disagree with the characterization of Detective Presley's testimony in the majority opinion. Specifically, the following question and answer is taken from the transcript:
Q. And were you able to confirm that Brian Keith Powell's mother did either own or was employed in a nursing home on North Market? (emphasis added).
A. Yes, sir. I did.
Presley then in court identified defendant as Brian Keith Powell.
The information given by Ms. Coleman was consistent with the victims' account of the crimes and matched the other evidence presented at trial. A rational juror was justified to conclude beyond a reasonable doubt that this defendant, Brian Keith Powell, was the party identified by Ms. Coleman in her statement. The defense presented nothing to contradict this reasonable inference. The victims' testimony, other evidence and Ms. Coleman's statement sufficiently proved the commission of the crimes and defendant's identity as one of the perpetrators.
Because it found insufficient evidence, the majority opinion did not reach the issue of the admissibility of Ms. Coleman's statement. Clearly, her statement was not harmless, and if inadmissible, a remand for a new trial rather than an acquittal, is the correct remedy.

OPINION ON REHEARING
Before SEXTON, NORRIS, BROWN, STEWART and GASKINS, JJ.
PER CURIAM.
This court granted a rehearing before a five-judge panel pursuant to URCA Rule 2-18.7 to reconsider the correctness of its original opinion. We now reaffirm and reinstate the original opinion.
We write, however, to correct and clarify one point. We stated that in cases involving the defendant's claim that he was not the perpetrator of the crime, or where he remains silent, the Jackson rationale requires the State to negate any reasonable possibility of misidentification. In support we cited the cases of State v. Brady, 414 So.2d 364 (La.1982), and State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991). This court has been somewhat inconsistent in its enunciation of the rule, sometimes referring to the reasonable possibility of misidentification,[1] and others to the reasonable probability.[2] In the seminal case of State v. Brady, supra, the Supreme Court referred to the rule both ways.[3]
On closer review of State v. Brady, supra, together with the other seminal cases of State v. Long, 408 So.2d 1221 (La.1992), and State v. Smith, 430 So.2d 31 (La.1983) (the Supreme Court's latest ruling on the issue), we are convinced that the correct standard under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 is that the State bears the burden of negating any reasonable probability of misidentification in cases where the defendant asserts he was not the perpetrator or he remains silent. Our original opinion is corrected and clarified to reflect this. Our previous statements in State *1013 v. Chism, supra, and the cases cited in footnote 1, are also clarified in that regard.
With that said, we have reviewed the instant record and hold that the evidence adduced herein is not sufficient to negate the reasonable probability of misidentification. We reaffirm our analysis of the facts and our conclusion in the Court's original opinion.
ORIGINAL OPINION REAFFIRMED AND REINSTATED.
BROWN, J., dissents with written reasons, previously assigned.
GASKINS, J., dissents for the reasons stated by BROWN, J.
NOTES
[1] Two assignments neither argued nor briefed are deemed abandoned. URCA-Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir. 1989), writ denied 558 So.2d 1123 (1990).
[2] Three codefendants were tried and convicted simultaneously with Powell. See State v. Anderson, 27,956 (La.App.2d Cir. 4/10/96), 673 So.2d 366; State v. Collins, 27,957 (La.App.2d Cir. 4/3/96), 670 So.2d 809; State v. Kimble, 27,960 (La.App.2d Cir. 5/8/96), ___ So.2d ___ [1996 WL 229803].
[3] From the context this appears to mean alcohol and drug use, as well as sexual intercourse.
[4] According to Ms. Coleman's statement, the assailants tied her up superficially, only to make Gilliam think they were both being attacked. In fact, Ms. Coleman quickly got loose.
[5] Unless otherwise indicated, page cites refer to the transcript in State v. Kimble, 27,960-KA.
[6] In addition, Ms. Johnson, Ms. Coleman's aunt, could have been called to testify as she did at a pretrial hearing that Ms. Coleman was indeed "Keith Powell's" girlfriend, and perhaps identified him. Trans. (8/22/94), p. 37.
[1] See, e.g., State v. Davis, 27,961 (La.App.2d Cir. 4/8/96), 672 So.2d 428; State v. Green, 27,652 (La.App.2d Cir. 1/24/96), 666 So.2d 1302; State v. Wilson, 27,228 (La.App.2d Cir. 8/23/95), 660 So.2d 571; State v. Toney, 26,711 (La.App.2d Cir. 3/1/95), 651 So.2d 387; State v. Ford, 26,422 (La.App.2d Cir. 9/21/94), 643 So.2d 293; State v. Carey, 628 So.2d 27 (La.App.2d Cir.1993), writ denied 635 So.2d 236 (1994); State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991); State v. Shepherd, 566 So.2d 1127 (La.App.2d Cir.1990).
[2] See, e.g., State v. Gipson, 26,433 (La.App.2d Cir. 10/26/94), 645 So.2d 1198; State v. Thomas, 26,116 (La.App.2d Cir. 6/22/94), 639 So.2d 408, writ denied 94-2332 (La. 1/13/95), 648 So.2d 1337; State v. Williams, 618 So.2d 606 (La. App.2d Cir.), writ denied 625 So.2d 1060 (1993); State v. Hamilton, 594 So.2d 1376 (La.App.2d Cir.1992); State v. Turner, 591 So.2d 391 (La. App.2d Cir.1991), writ denied 597 So.2d 1027 (1992); State v. White, 590 So.2d 1330 (La. App.2d Cir.1991); State v. Lee. 577 So.2d 1193 (La.App.2d Cir.1991); State v. Williams, 567 So.2d 735 (La.App.2d Cir.1990); State v. Litty, 521 So.2d 849 (La.App.2d Cir.1988).
[3] "Under this rationale, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof." 414 So.2d at 365. "Our review of the record convinces us that the state negated any possibility of misidentification of this defendant as a perpetrator of the crime." Id., at 365-366.